The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Christian Serrano-Delgado, Appeal No. 19-1652. Attorney Gonzalez, please introduce yourself for the record and proceed with your argument. Good morning, ladies and gentlemen, Honorable Judges. AFPD Victor Gonzalez on behalf of Christian Serrano-Delgado. I will request to reserve three minutes for rebuttal. We'll wait till we get on the record for that, but I got you. Judge, I think we're on the record now. All right, then it is granted and you may proceed with your argument. This case of Mr. Christian Serrano-Delgado is about knowledge. It's about knowledge whether he knew that there was going to be a robbery. It's about knowledge whether he knew that there was going to be a firearm involved. Christian Serrano-Delgado is a 19-year-old young man who was taken afoul by Jonas San Valentin to commit a robbery and he did not know and he testified so that he did not know that he was going to be used as a transport for this robbery. The court committed various errors. First of all, in our opinion, denying the Rule 29 in this case. In that rule, the court denied our motion for the removal of counts three and four, which are the weapons. The error was based on the fact that there was not evidence of knowledge by Mr. Serrano that they were going to use a weapon in this case. The cases in this circuit and the Supreme Court based on Spiney or Spiney and Rettman require almost certainty and there was no proof of any certainty whatsoever. Also, the issue of the knowledge required that there was going to itself. Mr. Serrano called as a witness the perpetrator of the murder, Jonas San Valentin, who had sent an email through his lawyer to both the government and the defense that Mr. Serrano did not know what was going to happen. When we subpoenaed the witness and it was brought to the court, we had provided the court with questions to be asked to determine any Fifth Amendment involvement and the court, instead of doing the questions of specific inquiry, it did a blanket Fifth Amendment determination and prevented the witness from testifying where his testimony based on his email that had been sent to the government and defense was that Mr. Serrano did not know that there was going to be a robbery. Mr. Gonzalez, let me direct your attention back for a moment. To the question of the robbery, couldn't a jury find based on him driving his car three times past the restaurant, parking not at the restaurant but 400 feet away and then making up a story about why he was feigning doing something in the trunk of his car, couldn't a jury find based on that he conspired with them to assist with the robbery by providing the getaway car? Well, the issue of the 400 feet is interesting because the government pointed out that in front of the actual bar that got stolen, where the murder took place, there was space. If he was the getaway car, isn't it the same reasonable presumption that he would have parked right in front of the restaurant? Mr. Serrano testified that the only reason he parked there is because Valentin told him to park there. So he was just, remember the facts that he testified to, they have been smoking marijuana since six o'clock in the afternoon, Serrano's 19, he's young, he's told what to do, he just does it. And Valentin comes walking from that distance with Miro, the second co-defendant that had the knife, and he doesn't know what's going on. He has actually, the fact that he parked so far away would have been a way to make sure that he didn't know what happened. What's your explanation for why he went through this pretense with the trunk of his car? Well, he had in the trunk of the car, he testified he had a whole bunch of boxes of tennis shoes, and that they were moving around as they were driving. So he took the advantage that they stopped to try to tie them down so they wouldn't be moving around. And that's what he testified in court. But wasn't there testimony that he was told to do that to make it look like he was doing something there? Yes, there is testimony that he was told to do that to make it look like, but he testified that he did have the boxes in the back. Suppose the jury believed that testimony and disbelieved his testimony about the shoeboxes, then how do you explain why he would be doing that other than that he knew something nefarious was going on? Well, Your Honor, you're right in the fact that the jury has a right to believe or not believe whatever they feel appropriate or not. The question is what evidence do they have besides that to get to the level of beyond a reasonable doubt? And the issue here, I believe it's... How do you still haven't explained the three-time drive-by? Mr. Serrano explained it in his testimony. He was doing exactly what Mr. Valentin was telling him to do. He told him to drive this way, come back, and then sometime passed and they drove back up again. Mr. Valentin could very well be casing that place or not. The question is, did Mr. Serrano have knowledge that that was what Mr. Valentin was doing? And there is no proof of knowledge. There's only inferences or speculation by the government as to that conclusion that the government wanted the jury to reach that Mr. Valentin knew what was being planned with Mr. Serrano and Mr. Valentin. And our position is that that's not enough for the inference that he knew that this was a robbery in planning. Now, after the robbery, when they got in the car and the weapon was visible and the bleeding was visible, then yeah, at that point, he realized it. But then he also testified that at that moment, Mr. Valentin told him, take me to the hospital or I'll shoot you, which is a reasonable thing for somebody who's dying to the man or the driver. Again, the issue of knowledge, both as to the weapons with the cases of Spiney and Roseman, that requires almost particular knowledge, specific knowledge of the weapon use, which there is no such knowledge. And then you have the lesser standard for the issue of the conspiracy. Let me ask you about that point, because I'm not sure I follow you on that. If, and I know you say there's insufficient evidence that he conspired to help with the but if we find that there was sufficient evidence that he conspired to help them do a robbery, then isn't that the test for the gun is not knowledge, is it? Isn't the test for the gun under a conspiracy charge, whether it was objectively reasonable or foreseeable that they would be using a gun? Well, no, it's a knowledge to a practical certainty on the but that's for aiding and abetting for conspiracy on Pinkerton. That's not the test, is it? Well, I'm happy you mentioned Pinkerton because Pinkerton is a misapplied here. Mr. Gonzalez, before you go there, just explain to me why if there is a conspiracy finding, knowledge would be required to hold someone liable for a foreseeable action in the course of the conspiracy by one of the co-conspirators. I thought it was not knowledge, it was reasonable foreseeability. Well, what happens, your honor, is that when you apply Pinkerton to a conspiracy, you're lowering the standard of proof from a specific intent that might be required for the agreement on the conspiracy to be big to basically anything that could be foreseeable. If you look at the case there, there was obvious that they had conspired and yet found not responsible for the firearms. So in a minimum, in this case, we have even a better situation that's finding that the even if Mr. Delgado knew something was afoot and that's a likelihood that something was going to happen. He did not know that there was going to be an actual gun being used and there is no evidence in the record that shows that he had that knowledge except the government's suppositions and assumptions. So I hope I'm answering your question, but the knowledge required, I do not believe is found in this case with the evidence the government presented. There was no witness testimony, there was no corroborating testimony by co-defendants. All we have is the assumption that because he was in the car, he knew what they were up to, meaning what Miro and Valentino were up to. Again, he was just a 19-year-old kid driving the car because some friends gave him free marijuana if he drove him around. That's not enough, I believe, to make an assumption that he conspired with them. There is no evidence of conspiracy, there is an inference of conspiracy and I do not know that that's enough in this case. If we go to the weapon charges, again, the cases of Spiney and Roseman require basically specific intent and again, it's not found here. There's no evidence that he knew they had weapons, there's no evidence that he aided or abetted in any way or conspired in any way with Valentino for the use of a firearm in any way. Again, and then you have the issue that Valentino stated that he had that Cristian Serrano Aguero did not know there was going to be a robbery and that testimony would have been crucial to answer all the questions that you have about knowledge, but that testimony was not being able to be presented except as proper in the case because of the court's determination that the Fifth Amendment by allegation by Mr. Valentino was sufficient to do a blanket denial of his presentation as a witness and deny Mr. Cristian Serrano Aguero of his due process. That's the answer to all the issues of knowledge on the conspiracy, on the issues of the aiding and abetting, on the issues of the weapon. If that testimony would have been presented and if the jury would have believed that testimony, then this case is over. He did not know. If he did not know, the requirements of mens rea on any one of these allegations by the government falls down. So, we don't need to get to those particulars if we decide, if the court decides that the court erred in denying the testimony or his lawyer who was then, when the court declared him unavailable because of his Fifth Amendment right, we had a subpoena ready for the lawyer who had sent the email and the court denied that the lawyer testified about what his client had said. Counsel, let me interrupt you and ask whether the panel has questions about this issue or any other follow-up questions at this time. All right. You've reserved some time and we'll hear from the government. Thank you. Attorney Gonzalez, please mute your audio and video. Attorney Bornstein, if you could introduce yourself on the record to begin. Chief Judge Howard and may it please the court, David Bornstein on behalf of the government. This court should affirm Mr. Serrano's convictions and sentence for several reasons, rejecting the challenges he's brought on appeal. First of all, the jury's verdict was amply supported by the trial evidence as to whether or not Mr. Serrano had knowledge of the conspiracy and of the several substantive offenses. As this court stated... Amply is a little ambitious, isn't it? Well, no, your honor. As you know, this court has routinely said that when it comes to a conspiracy, often you have to infer from the actions of individuals, whether coordinator or not, whether there indeed was a conspiracy and particularly whether a defendant had joined a conspiracy. And in Stewart versus Coalter back in 1995, this court said that when there is a getaway driver for a crime and criminals run to the getaway car and the getaway car quickly takes off, a jury may reasonably infer that there's prior planning and that the getaway car driver had full knowledge as to what he was doing, what the criminals were doing, what his role in the conspiracy was. And that precedent applies here fully. The jury could infer from Mr. Serrano's actions in driving the armed robbers and their weapons from the public housing project across Ponce to the bar, driving in front of that bar three times in four minutes, parking his car 500 feet down the road, facing the flight route at a sharp turn in the road. They could infer from the nine minutes that passed from his parking the car to then Mr. Valentin and Miro showing up at the bar as fully masked and armed robbers to the fact that I think most tellingly that when shots rung out and the jury saw Mr. Miro with the knife in his hand, with a bandana on his face, running back to the car. And then a few seconds later, Mr. Valentin with the gun in his hand and his mask on his face, hobbling off towards the car, that those two individuals then showed up to the car with their masks and their weapons. And that Mr. Serrano at that point very clearly knew what was going on. But again, we believe that the jury can infer that he knew all along what was happening and especially... Well, there's no evidence that he emerged, that the two emerged from the car so covered or that there was a display of a weapon within the car. That is correct, Your Honor, but it's a reasonable inference that the jury could make. But our case really doesn't hinge on that. I'd simply have the jury, sorry, have the panel recall the testimony of Rose Marie Ramos, who is the nurse who lived at the end of the block next to where the car was parked, Mr. Serrano's car. She testified that she saw Mr. Valentin fully masked, firing his gun repeatedly at the bar as he was limping towards the waiting getaway car. She said that the car backed up closer to Mr. Valentin so that he could get in. And the second he got in, it took off, its tires screeching. Your Honor, I truly believe, given all that evidence, given the fact that Mr. Serrano did not call the police at any time, did not call the paramedics at any time, that is his own testimony at trial, that he then drove into a remote and dark subdivision where his car then got a flat tire, that he deposited the bleeding Mr. Valentin off on the side of the road. He tried to drive off, but his car had the flat. All of that evidence, Your Honor, was an ample basis, Judge Chiara, by which the jury could reasonably infer his knowledge and willing participation in the robbery and in the robbery conspiracy. Now, Mr. Serrano has also argued that the district court improperly allowed Mr. Valentin to invoke his Fifth Amendment privilege against his request that Mr. Valentin testify on his behalf at trial. We believe that Mr. Serrano has waived this assignment of error, and we believe he waived it because before the district court at that hearing, Mr. Valentin's lawyer said that Mr. Valentin had the right to make a blanket claim of privilege against testifying because everyone knew that Mr. Serrano wanted him to contradict what he said in pleading guilty, namely that he had conspired and agreed to commit the robbery with Mr. Serrano. Indeed, I believe at that hearing, Mr. Serrano's attorney said, yes, we hope that he will contradict himself when it comes to some of the statements he made in pleading guilty. And when Valentin's lawyer said that, Mr. Serrano's lawyer did not object. Instead, he said, we agree. He has the right to do so. And when the judge then asked him, do you invoke your Fifth Amendment right or your Fifth Amendment privilege? And Mr. Serrano said yes. And Mr. Valentin said yes. Mr. Serrano did not object. So if not waived, it has been forfeited, and as something that's been forfeited, Mr. Serrano needs to argue plain error on appeal, but he fails to do so, thereby waiving plain error review. He also alludes to the fact that he thinks that the, or he alludes to his argument that the district court should have ordered Mr. Valentin's lawyer to testify for the defense. But again, the district court properly concluded that Mr. Valentin's hearsay statement was unreliable hearsay and thus precluded under Rule 804. Why do you say it's hearsay? Why isn't it a statement against interest? Well, of course it is hearsay because the declarant, Mr. Valentin, would not be on the stand and there wouldn't be an exception to it. It's not a statement against interest. How is it not a statement against interest? It seems to me that the record suggests, if not shows, that he was at risk of being subject to a perjury charge based on what he said at his change of plea. Yes, Your Honor, and that's precisely why he's able to invoke his Fifth Amendment privilege. But it's not one that is against his interest within the terms of 804b3, precisely because in order for it to be against his interest in those terms, he has to have made it only because he believed it was true. The circumstance of his making it is that it was so against his interest, he would only have said it because it was true, and also there needs to be an indicia of trustworthiness surrounding the circumstance in which he made it. But Valentin's own lawyer said she didn't find the statement reliable. She said that Valentin and Serrano were friends. She said that she believed that this was an honorable gesture he was doing, trying to help out his friend, Mr. Serrano, and most importantly, he said it to his attorney with the intent that she pass it on to the trial. If Valentin was, if he were telling the truth when he said that Serrano did not have this advanced knowledge, wouldn't that subject Valentin to higher penalties for orchestrating and duping Serrano? It would, your honor, and if you look at United States v. De La Cruz, this court's precedent from 1993, that was precisely the same situation. There was a co-defendant who had pleaded guilty and was awaiting sentencing, who sought to absolve the defendant going to trial, saying he had nothing to do with the offense, and then-Chief Judge Boudin, in his opinion, said that the co-defendant's testimony could have completely absolved the defendant of criminal liability. However, the co-defendant then invoked his Fifth Amendment privilege, and the court correctly found that, you know, had he shown up and said, I actually duped the co-defendant going to trial into participating in this crime. He knew nothing. I duped him into doing it. That would have harmed him when it came to sentencing, for it would have showed that he may have been a leader. He brought an individual into the conspiracy, and he did so under false pretenses, and it was for that reason that this court in De La Cruz said that the district court properly accepted the blanket claim of privilege that that individual made in De La Cruz, and we believe, again, that De La Cruz applies herefore. Well, I accept it. I understand the privilege argument, but didn't you just make the case that it was a statement against his penal interest and therefore not hearsay? Well, Your Honor, again, it's not simply any statement against one's penal interest. 804b3, the exception, is not that broad. It is a statement that is so against one's interest that one would only make it because it was true, and to back that up, if used in a criminal trial as here, there needs to be further indicias of trustworthiness based upon the circumstances under which it was made. So, yes, we believe it would have subjected him to possible additional liability, a perjury prosecution, for example, or if it came to cross-examination, Mr. Serrano said that Mr. Valentin had distributed marijuana to him. That is additional criminal liability for which he had not pled guilty or even at that stage been charged. Why doesn't making the statement to Mr. Valentin have any reliability? I mean, isn't the attorney the person that you're supposed to trust? Oh, yes, Your Honor, but I think as many lawyers who've had clients know, clients do not always tell the truth, and sometimes especially to their attorneys, but beyond that, Your Honor, the intent of Mr. Valentin was that his attorney passed this on to the prosecutor. He was not telling it to his attorney as part of his recounting what happened to aid in his defense. He told it to her so that she would tell the prosecutor, and that is why Valentin's own attorney said he just did an honorable thing. Well, why isn't that noble if this guy is innocent? That may well be the case, but it's not sufficient to find that the court abused its discretion in finding that there was not sufficient indicia of reliability, and also that it's not necessarily true that Mr. Valentin said that only because it was true. As was argued to the district court, an additional reason why he might have said it is to help out his friend, and next I want you to simply note... But before you do that, isn't the only thing that the court said about that statement that it was not against his interest? Is there a finding about reliability, or did the court reject it as hearsay on the basis that it did not fit the exception because it was not against his interest? The court rejected on the grounds that it did not fall into the exception, but this court reviewing that decision can only reverse it if it finds that it is perfectly clear that Mr. Valentin would not be had he testified, and of course it's not perfectly clear because, again, there would have been the perjury... Oh, I'm sorry, Your Honor. You're speaking about having the attorney testify. I'm sorry about that. So when it came to the attorney, we once again just review it for whether the court abused its discretion, and I don't think on this record where the attorney herself who heard the statement who said that she found that it was not reliable, I don't think that you can find that the court abused its discretion, especially since Mr. Serrano's only argument before the district court for why it was reliable is that he made it to his attorney. So unless this court wants to hold that as a matter of law, any statement made to one's attorney that might subject one to additional penalties sufficiently trustworthy that it falls into the 804b3 exception, it's simply given the standard of review. The district court did not abuse its discretion in that holding. I do want to address the 924th C&J convictions, Your Honor. We believe, first of all, that the challenge has been waived, and we believe that the challenge has been waived because it depends upon the argument that a Hobbs Act conspiracy is not a crime of violence for purposes of the force clause, and that argument was never made before the district court by operation of Rule 12c3, and this court's precedent, the United States versus Sweeney, it is waived, and it cannot be resuscitated on appeal. Even if the court does not pursue the waiver route under 12c3 and Sweeney, it is nonetheless clear that since he didn't raise that argument, it should be reviewed for plain error. However, he does not argue plain error. He does not argue that the error affected his substantial rights, and for that reason, he waives plain error review, and the court can settle on that ground, but even reviewing it de novo, Your Honor, I want to point out that the two predicates, we acknowledge that one of the predicates of Hobbs Act conspiracy is no longer valid under United States versus Davis, but the other one is, which was Hobbs Act robbery, and although the jury returned a general verdict, it is clear beyond doubt that where here the jury convicted the defendant of both predicates as under counts one and two, that there was no possibility of error, and that follows from this court's holding in Hernandez-Román from last year, but furthermore, it is also clear that any error was harmless because the evidentiary basis for the two predicates were inextricably intertwined. The proof that the only proof that came out at trial that one of the co-conspirators possessed and discharged a firearm was Valentin's possession and discharging of the firearm during the Hobbs Act robbery itself, so the jury, if they were to convict him of the 924C and J counts pursuant to the conspiracy predicate, they had to infer from the Hobbs Act robbery that Mr. Serrano participated in the conspiracy to commit the Hobbs Act robbery, and so it's simply as a matter of necessity that the jury, if they convicted him under the invalid predicate, they must have also convicted him under the valid one, and this court has already adopted that analysis back in 1990 in United States versus Angiulio, and several other circuits have done so post-Davis when it comes to this sort of factual scenario. Finally, Your Honor, when it comes to the, or I shouldn't say finally, I want to briefly address the Pinkerton instruction. Since that was raised, the instruction was fully appropriate. We advised Mr. Serrano of it two there's adequate notice. The instruction itself followed the pattern jury instruction for Pinkerton instructions, and Mr. Serrano never argued before the district court that there was a problem with the language of that instruction, thereby forfeiting it under Rule 30D, and he doesn't argue plain error on appeal, and moreover, the Pinkerton instruction here was fully appropriate because we were only concerned with Pinkerton instruction in cases where there are several disparate criminal acts, and the jury is then asked to find that these disparate, seemingly unconnected acts were connected by means of a conspiracy. Here, however, all the criminal acts, the substantive acts, were stemming from the armed robbery of the bar, and the jury was asked to infer that the coordinated action of the three defendants were pursuant to conspiracy based upon the fact that it was indeed coordinated action, and so we think there's no problem there. And finally, if I may, yes. Yes, take 30 seconds. I just want to briefly address the substantive reasonableness of the sentence. The district court did a downward departure and then sentenced Mr. Serrano to the bottom of the guideline range, and his co-defendants are not apt comparators simply because they pleaded guilty and benefited from charge and sentencing bargaining. It is for these reasons, your honors, that we ask this court to affirm Mr. Serrano's convictions and sentence. Thank you. Thank you, Mr. Bornstein. If you would disconnect or mute, I'm sorry, just mute. And if attorney Gonzalez would reintroduce himself to put himself back on the record. Victor Gonzalez, AFPD, on behalf of Chris and Serrano Legado. Briefly, your honors, as to the testimony of Mr. Jonathan Valentin, the court requested questions so that the court could do a specific inquiry and to the Fifth Amendment. We submitted approximately 10 questions. Six of those, seven of those, were questions about the firearm. There is no possible liability for Mr. Valentin on the issue of the sole firearm that he had, and those questions were addressed. Any knowledge that Mr. Serrano might not have of his use of a firearm, so it would not have affected Mr. Valentin's Fifth Amendment right. And the purpose of having the questions submitted was so that we could actually determine if there was a conflict with the Fifth Amendment or not. So the court, if it had conducted the inquiry, then this issue could have been either resolved by either amended questions or limiting the questions from the ones that we submitted to other questions. The government raises the issue that the court needed a determination on credibility, but that's not the court's decision. That is the jury's decision whether they believe Mr. Valentin or they don't believe him, and that's what the jury is there for. So the court, by making a determination, which they only, if he made a determination on reliability or credibility, it's inappropriate. The court made a determination based on the issue of whether it was a statement against interest, and we believe that determination is wrong. On the issue of the sentence with the government mentioned at the end, Mr. Delgado, a 19-year-old first offender who was a driver who was smoking marijuana all night long and was driving these people around because they offered him marijuana, was sentenced in between the two defendants, that one that had a firearm and killed somebody, and one that had a knife and threatened four people. And it's patently offensive, to me at least, that the sentence was as high as it was. I believe it's an abuse of discretion by the court. On the other issue, the government touched on, we believe that the Pinkerton instruction simply took away the specific intent required in the not only the 924 C's, but in the Hovzak robbery, and by taking away, by using it, it amends the general culpability requirement that is not found in the statute. And there's been a lot of criticism on Pinkerton for this same reason, and I believe this is one of those cases, based on the facts of this case, that the use of that instruction is an abuse by the court to the defendant's knowledge of what he's being accused of, because Pinkerton changed the nature or the elements of the offense in this way. Again, this is about knowledge, as to the weapons, there's no proof that he had knowledge, that he had knowledge that they were going to be used, that they had knowledge that Valentin had one, there's no proof of that. And then as to the knowledge of the actual robbery to be committed, we submit that Valentin's testimony that was not allowed, saying that he did not know, should have been allowed, because he would have cleared, at least he would have provided Mr. Serrano with sufficient evidence to show that he, that what he stated in his testimony was not correct, that he did not know. This is a horrible crime on a police officer. Nobody has made any light of that. Actually, it was at the forefront during the trial. I think we're going to leave it there. Thank you very much for your argument. You all have a good day. That concludes argument in this case. Attorney Gonzales-Bottwell and Attorney Bornstein, you should disconnect from the hearing at this time.